UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| MARK DAVID STEFFEN, | 3:22-CV-03017-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING MOTION TO SET ASIDE DEFAULT |
| UPLIFT, INC., | |
| Defendant. | |

On October 26, 2022, Defendant Uplift, Inc. (Uplift) filed a notice of removal from small claims court of the Sixth Judicial Circuit in South Dakota. Doc. 1. Shortly after, on October 31, 2022, Uplift filed a Motion to Set Aside Default, Doc. 2, and a certificate of service stating that service was sent via first class mail and by email to the plaintiff Mark Steffen, Doc. 5. Steffen, who is pro se, has not responded to the motion. Doc. 8. For the reasons discussed below, this Court finds that removal was proper, that there is jurisdiction to hear this case, and that the judgment entered by the small claims court should be set aside.

I. **Facts[1]**

Uplift is a Delaware Corporation that is headquartered at the Plug and Play Tech Center (Plug and Play) in California. Doc. 3 at 1. Uplift is a "buy now, pay later" service allowing

---

[1] Because Steffen has not responded to the filings in this case, the facts are drawn entirely from Uplift's filings at this point. This decision should not be understood as a ruling on the merits of Steffen's claims against Uplift or as making any findings of fact other than those necessary to justify exercise of jurisdiction at this stage and to set aside the default judgment.

customers to finance travel costs at the e-commerce point of sale. Id. at 2. Steffen is a customer

of Uplift who agreed to borrow $347.98 at 27.86% interest, payable in eleven monthly

installments, to pay for a round-trip flight from Rapid City, South Dakota, to Las Vegas, Nevada.

Id. at 3. However, Steffen called Uplift's customer service stating that he should not have to pay

because his flight had been cancelled.[2] Id. at 4; Doc. 4-2 at ¶ 11. Customer service explained that

because the airline had not issued a refund to Uplift, Steffen would still need to repay his loan.

Doc. 3 at 4; Doc. 4-2 at ¶ 11.

On the phone call, Steffen acknowledged receiving a voucher from the airline and did not

suggest that anyone, other than himself, booked the flight and took out the loan. Doc. 3 at 4; Doc.

4-2 at ¶ 12. Uplift's terms and conditions, which Steffen agreed to upon applying for the loan,

state:

> Purchase Disputes. Except as otherwise provided in this Note, the Lender is not
> responsible or liable to you for the quality, safety, legality, or any other aspect of
> any property or services purchased with the proceeds of your loan. If you have a
> dispute with any person or entity from whom you have purchased such property or
> services, you agree to try to settle the dispute directly with that person or entity.

Doc. 3 at 4; Doc. 4-2 at ¶ 14. Despite paying one installment after this phone call took place,

Steffen filed three disputes with his credit bureau regarding payment on his loan claiming identity

theft. Doc. 3 at 5–6; Doc. 4-2 at ¶¶ 15, 18. Uplift's fraud department reviewed Steffen's loan and

found no evidence of fraud, which Uplift advised Steffen of via email. Doc. 3 at 5–6; Doc. 4-2 at

¶¶ 16, 19. Ultimately, Steffen paid only two of the eleven scheduled payments. Doc. 3 at 4; Doc.

4-2 at 74.

---

[2] While Steffen claimed that his flight was cancelled, an email from the airline suggests that Steffen
had voluntarily cancelled his flight six days before he was scheduled to fly to Las Vegas. Doc. 3
at 7–8; Doc. 4-2 at ¶ 29.

On August 1, 2022, Steffen filed suit against Uplift in small claims court in the Sixth Judicial Circuit of South Dakota. Doc. 1 at ¶¶ 1, 5; Doc. 1-2; Doc. 1-3 at 1; Doc. 3 at 7; Doc. 4 at ¶ 2. On August 4, 2022, Steffen, apparently after several requests from Uplift, sent an Identity Theft Victim's Complaint and Affidavit to Uplift by email after claiming to have already sent the information several times. Doc. 3 at 7; Doc. 4-2 at ¶ 26. Steffen did not include any copy of the previously filed lawsuit in the email sent to Uplift with the requested documents, however, Steffen wrote that he "filed a lawsuit against [Uplift] so that [Uplift] can come to court." Doc. 1 at ¶¶ 1, 5; Doc. 1-2; Doc. 1-3 at 1; Doc. 3 at 7; Doc. 4-2 at ¶ 23. Steffen had previously threatened litigation in his interactions with Uplift. Doc. 3 at 4, 6–7; Doc. 4-2 at ¶¶ 11, 21, 23–25. Of these litigation threats, three were very specific. One email sent on July 28, 2022, stated "Please also know that I [w]ill be filing a Small Claims Lawsuit against you on August 1, 2022 for $12,000 in damages for your 11 months of violations of the FDCPA and FCRA." Doc. 3 at 6. The next email, sent on August 1, 2022, read "I have filed a lawsuit against you so that you can come to court." Doc. 3 at 7. The final email, sent on August 4, 2022, reads, "You will also be receiving this packet in the mail with your lawsuit notice." Doc. 4-2 at ¶ 25. When Uplift asked Steffen to substantiate his claim that a lawsuit had been filed, Steffen responded that Uplift would receive the lawsuit notice in the mail. Doc. 4-2 ¶¶ 23–25.

Due to the pandemic, Uplift's office at the Plug and Play location was generally unstaffed, except for Wednesdays when an employee would come to gather the mail. Doc. 3 at 2; Doc. 4-1 at ¶ 3; Doc. 4-3 at ¶ 6. If the mailbox at the Plug and Play was full, the mail would then be brought to Uplift's office space. Doc. 3 at 3; Doc. 4-1 at ¶ 5; Doc. 4-4 at ¶ 4. Once mail was gathered and sorted, bills, bank statements, legal documents, and human relation materials were opened and scanned to the appropriate department of Uplift while the remainder of the mail was sent via two-

3

day shipping to the Uplift office in Reno, Nevada for further review.  Doc. 3 at 10; Doc. 4-3 at ¶¶ 6–7.

Steffen's small claims case against Uplift was sent by certified mail with an individual named Abby Cisneros signing the receipt on Monday, August 8, 2022.  Doc. 1-1; Doc. 3 at 9.  There is no employee at Uplift with the first name "Abby" or "Abigail" and no one with the last name of "Cisneros"; however, there is a contractor of that name who worked at the Plug and Play reception desk for the summer.  Doc. 3 at 9–10; Doc. 4-1 at ¶¶ 7–8; Doc. 4-4 at ¶¶ 5–6.  That is, Cisneros was hired by the Plug and Play and not by Uplift.  The two individuals at Uplift who handle the mail do not recall seeing any mail related to litigation in South Dakota prior to the entry of default.  Doc. 3 at 10; Doc. 4-3 at ¶ 8.  Because no one at Uplift received notice of the lawsuit, Uplift did not answer and default judgment entered on September 15, 2022.  Doc. 1-7; Doc. 3 at 10; Doc. 4-5 at ¶ 6.  Uplift received notice of default, and of the suit, on September 30, 2022, when in the Reno office they opened the forwarded mail received on September 28 at the Plug and Play location.  Doc. 3 at 11; Doc. 4-5 at ¶ 6.

Upon receiving notice of default, Uplift filed a notice of removal on the basis of federal question jurisdiction on October 26, 2022.  Doc. 1.  A few days later, on October 31, 2022, Uplift filed a motion to set aside the default judgment entered against them in state court and documents in support of that motion.  Docs. 2–4.  Steffen has not responded to the motion to set aside.

## II.     Discussion

### A.  Propriety of Removal and Exercise of Federal Jurisdiction

The first issue is whether this case was properly removed and in turn whether this Court has jurisdiction.  "[A] notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial

pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). Here, the facts established by Uplift, and not contradicted by Steffen, show that Uplift did not receive proper legal service or a copy of the complaint. Doc. 1-1; Doc. 3 at 9–10; Doc. 4-1 at ¶¶ 7–8; Doc. 4-4 at ¶¶ 5–6; see SDCL § 15-6-4(d)(1) (describing proper service methods). Instead, it appears that a contracted receptionist received the summons and complaint, and Uplift's employees did not get the complaint until Uplift received notice of default on September 30, 2022, when mail delivered to their Plug and Play office was forwarded to the Reno office. Doc. 3 at 11; Doc. 4-5 at ¶ 6.

The appropriateness of service of the summons and complaint is governed by South Dakota law because this case was commenced in small claims court in South Dakota. SDCL § 15-6-4(d)(1); Fed. R. Civ. P. 4(e)(1), (h). Under South Dakota Codified Law (SDCL), personal service of a summons is required (unless waived) and personal service on a "business entity" like Uplift means service "on the president, partner or other head of the entity, officer, director, or registered agent thereof." SDCL § 15-6-4(d)(1). The contracted receptionist does not qualify as any of those. R.B.O. v. Priests of Sacred Heart, 807 N.W.2d 808, 811 (S.D. 2011) (finding that service on a receptionist at a development office was not sufficient because the receptionist is not included in the statutory list of parties that are authorized to receive service). SDCL § 15-6-4(d)(1) then allows that "[i]f any of the above cannot be conveniently found, service may be made by leaving a copy of the summons and complaint at any office of such business entity within this state, with the person in charge of such office." Even if the contracted receptionist somehow were deemed "the person in charge of [the Uplift] office," that provision of SDCL § 15-6-4(d)(1) has the limiting language of "within this state," meaning South Dakota. While there are different procedural rules applicable to small claims cases in South Dakota, see SDCL ch. 15-39, none of these appear to

5

loosen the requirement on whom service must be made under SDCL § 15-6-4. This Court understands why Steffen would believe that he gave ample notice of the suit, but service on a contracted receptionist of Plug and Play and not of Uplift itself was ineffective and not in substantial compliance with the rules under South Dakota law. See R.B.O., 807 N.W.2d at 812–13 (discussing substantial compliance).

Steffen told Uplift that he was going to file suit on August 1, 2022, and sent an email that same day stating that he filed a lawsuit against Uplift. Doc. 3 at 6–7; Doc. 4-2 at ¶¶ 21, 23. However, Steffen did not attach a copy of a summons or the complaint[3] to the email sent on August 1, 2022, and did not provide it when Uplift requested Steffen to substantiate his claim relating to the litigation on August 4, 2022, responding instead that Uplift would receive a copy of the notice in the mail. Because empty threats of lawsuits sadly are not uncommon in society, this Court does not view these communications as substantial compliance with the service requirements in SDCL § 15-6-4(d)(1). Uplift then received confirmation of the suit upon the entry of default, which Uplift received at the end of September. As notice was received by Uplift at earliest on September 28, 2022, Uplift had until October 28, 2022, to file its notice of removal. 28 U.S.C. § 1446(b). Uplift filed a notice of removal on the basis of federal question jurisdiction on October 26, 2022, thus removal was timely. Doc. 1. However, the question remains whether this Court has jurisdiction over this matter.

Subject matter jurisdiction, including upon removal, is an issue that can be raised at any time, either on motion of the parties or by the court itself, and it cannot be forfeited or waived. 28 U.S.C. § 1447(c); United States v. Cotton, 535 U.S. 625, 630 (2002); Ruhrgas AG v. Marathon

---

[3] In South Dakota small claims court, the complaint is technically called Plaintiff's Statement of Small Claims and the summons is called Notice of Small Claims.

Oil Co., 526 U.S. 574, 583 (1999).  A case may only be removed to federal court where the federal court would have had original jurisdiction.  28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (identifying diversity of citizenship or federal question jurisdiction as two ways to file in federal court).  The defendant removing the case from state to federal court bears the burden of proving that the removal was proper and that federal subject matter jurisdiction exists.  In re Bus. Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993) (per curiam). "A defendant generally is required to cite the proper statutory basis for removal and to allege facts from which a district court may determine whether removal jurisdiction exists." Pet Quarters, Inc. v. Depository Tr. & Clearing Corp., 559 F.3d 772, 778 (8th Cir. 2009).  Federal courts have a "virtually unflagging" obligation to hear and decide cases within federal jurisdiction.  Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976); see also Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 77 (2013) ("Federal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, then to usurp that which is not given.'" (citation omitted)).

Here, Uplift removed this case on the basis of federal question jurisdiction.  28 U.S.C. § 1331; Doc. 1 at ¶¶ 8–9.  Under federal question jurisdiction, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  A majority of cases brought under federal question jurisdiction involve a cause of action that is created by federal law.  See Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916) (establishing Justice Holmes' early conception of federal question jurisdiction).  Under the "well-pleaded complaint" rule, the federal question must appear on the face of the plaintiff's complaint, rather than in an anticipated defense.  See Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908); Taylor v. Anderson, 234 U.S. 74, 75–76 (1914);

Gully v. First Nat'l Bank, 299 U.S. 109, 116 (1936); Williams v. Ragnone, 147 F.3d 700, 702 (8th

Cir. 1998) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 27–28 (1983))

("Federal question jurisdiction exists if the 'well-pleaded complaint establishes either that federal

law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution

of a substantial question of federal law.'").

      In Steffen's statement of small claims he sought "damages under the Fair Debt Collection

Practices Act [(FDCPA)] Section 809(b) . . . ." Doc. 1-3 at 1. Under the FDCPA, "[a]n action to

enforce any liability created by this title may be brought in any appropriate United States district

court without regard to the amount in controversy, or in any other court of competent jurisdiction,

within one year from the date on which the violation occurs." 15 U.S.C. § 1962k(d). Thus, there

is federal question jurisdiction over this claim.

      Although removal is proper, there then is the issue of applicability of the Rooker-Feldman

doctrine. The Rooker-Feldman doctrine provides that "lower federal courts lack subject matter

jurisdiction over challenges to state court judgements." Wills v. Encompass Ins. Co., 47 F.4th

900, 903 n.2 (8th Cir. 2022) (citation omitted). The United States Court of Appeals for the Eighth

Circuit found, however, that this doctrine does not apply in situations like what Uplift has

presented here. Id. at 903–04 (allowing consideration of a motion to vacate a state court's

summary judgment order in district court after proper removal).

> [T]he Rooker-Feldman doctrine does not apply to cases removed to federal court.
> And the Tenth Circuit has correctly observed that "[p]roper removal does not
> constitute an appeal, de facto or otherwise, of the state court proceedings but a
> continuation of them." Jenkins v. MTGLQ Invs., 218 F. App'x 719, 723 (10th Cir.
> 2007). Accordingly, "the Rooker-Feldman doctrine has no application to a properly
> removed case where, as here, there is no attack on a separate and final state-court
> judgment." Id. at 724.

Id.

Jenkins v. MTGLQ Investors, which the Eighth Circuit cited positively in Wills v. Encompass Insurance Co., is on point to the situation in this case. In Jenkins, the pro se plaintiff did not serve a summons or a copy of the complaint on the entity defendant, instead effectuating service on an agency that was not authorized to accept service on behalf of the defendant. Jenkins, 218 F. App'x at 722. The plaintiff then obtained a default judgment. Id. Months later, the defendant learned of the default judgment after receiving a foreclosure report that disclosed a judgment lien against it. Id. The defendant then promptly removed the case and moved to set aside the default based on defective service. Id. The United States Court of Appeals for the Tenth Circuit, citing cases from other courts of appeal that had approved removal in similar circumstances, found that the district court had the power to set aside the default judgment and that the Rooker-Feldman doctrine had no application to a case that had been properly removed where "there is no attack on a separate and final state-court judgement." Id. at 723–24. Because there is federal question jurisdiction and the case was properly removed, this Court can now consider Uplift's Motion to Set Aside Default.

## B. Motion to Set Aside

Uplift moves to set aside the default judgment pursuant to Federal Rules of Civil Procedure 55(c) and 60(b). "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Under Rule 60(b), a district court may grant relief from a final judgment. Fed. R. Civ. P. 60(b). As such, "[a]ny of the reasons sufficient to justify the vacation of a default judgment under rule 60(b) normally will justify relief from a default entry and in various situations be enough to open a default judgment." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2696 (4th ed., 2021) [hereinafter Wright & Miller].

Under Rule 55(c), a district court should consider "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." <u>Johnson v. Dayton Elec. Mfg. Co.</u>, 140 F.3d 781, 784 (8th Cir. 1998). A defaulting party is considered blameworthy or culpable if the default was the result of "contumacious or intentional delay or disregard for deadlines and procedural rules." <u>Id.</u> at 784. A "marginal failure" to meet pleading or other deadlines, on the other hand, will be excused, especially when there are meritorious defenses and an absence of prejudice. <u>Id.</u> Relief is most commonly issued when such a marginal failure stems from something that could be considered "excusable," like if the "defendant presents evidence that [they] received no actual notice of the suit in time to answer"; in such a case, "the court is likely to grant relief." Wright & Miller, <u>supra</u>, § 2695.

In this case, Uplift did not receive proper service of the suit and, although warned by Steffen of a suit, was not fully aware of its existence until after it received notice of a default judgment. The person who signed for the certified mail containing the original notice and small claims court statement was not employed by Uplift, but rather what appears to be a seasonal employee of the Plug and Play facility. Doc. 1-1; Doc. 3 at 9–10; Doc. 4-1 at ¶¶ 7–8; Doc. 4-4 at ¶¶ 5–6. The absence of an answer following improper service is excusable, even though this failure likely stems from Uplift having their website direct legal mail to a location that has been largely unstaffed (or staffed by a non-employee) for two, almost three, years. <u>See</u> <u>Contact us.</u>, Uplift https://www.uplift.com/contact/ (last visited Jan. 10, 2023); Doc. 3 at 2. Regardless of this failure, there is no evidence of bad faith on the part of Uplift.

Next, there seems to be little unfair prejudice to Steffen. Very shortly after default judgment entered, Uplift learned of it and filed the removal papers and motion for the default to

10

be set aside.  Doc. 1; Doc. 2; Doc. 3 at 11; Doc. 4-5 at ¶ 6.  The state action is not yet a year old, so the likelihood of "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion" is minimal.  See Johnson, 140 F.3d at 785 (citation omitted).  While setting aside default judgment is plainly not what Steffen would want, the true prejudice to Steffen does not justify a refusal to set aside the default.  See In re Jones Truck Lines, Inc., 63 F.3d 685, 687 (8th Cir. 1995) (finding a thirty-two day delay caused by a mistake was not prejudicial).

Finally, it appears that Uplift does have a meritorious defense.  In the affidavits Uplift submitted in support of its motion to set aside, an employee in the Uplift fraud department stated there was no evidence of fraud, even after an investigation conducted by Uplift.  Doc. 3 at 13; Doc. 4-2 at ¶¶ 15–30, 34.  The $12,000 judgment seems to simply be for the small claims court jurisdiction limit, rather than tied to a damage calculation.  Further, Uplift alleges that they do not qualify as a debt collector under the FDCPA because they owned the loan that Steffen challenges.[4] Doc. 3 at 13; see 15 U.S.C. § 1692a(6) (defining "debt collector").  Though if Steffen had replied to any of the motions in this case he likely would argue against these defenses, that is not the issue; instead, this Court must look at "whether the proffered evidence would permit a finding for the defaulting party."  Johnson, 140 F.3d at 785 (cleaned up); see Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988); Wright & Miller, supra, § 2697. Therefore, there is good cause to set aside the small claims default entered in this case.

### III.   Conclusion

For the reasons discussed above it is hereby,

---

[4] Uplift's position that the FDCPA does not apply ironically could result in a remand to state court because the amount in controversy is below the $75,000 jurisdictional limit for federal court diversity jurisdiction under 28 U.S.C. § 1332.  If this is a simple breach of contract dispute or fraud or deceit claim, then a state court would have jurisdiction.

ORDERED that Uplift's Motion to Set Aside Default, Doc. 2, is granted.  It is further

ORDERED that the Clerk of Court send a copy of this Opinion and Order to Plaintiff Mark David Steffen and that Uplift, Inc., file its Answer to the Statement of Small Claims within 21 days of this decision.

DATED this ___19ᵗʰ___ day of January, 2023.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE